UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KENNETH M. RIES and MARILYN J. RIES, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CAPONE IRON CORPORATION, ) <br> E.A. COLANGELI CONSTRUCTION ) <br> CO, INC., and JOHN DOE CORPORATION, ) <br> ) <br> Defendants, ) <br> ) <br> and ) <br> ) <br> CAPONE IRON CORPORATION, ) <br> ) <br> Third-Party Plaintiff, ) <br> ) <br> v. ) <br> ) <br> D&S COMMERCIAL MASONRY, ) <br> ) <br> Third-Party Defendant. ) | Civil Action No. 13-11482-DJC |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                                                                    **December 22, 2015**

**I.      Introduction**

Plaintiff Kenneth M. Ries ("Ries") brings claims against defendants Capone Iron Corporation ("Capone") and E.A. Colangeli Construction Co., Inc. ("E.A. Colangeli") for

1

personal injuries that he received at a construction site.[1] D. 1. Capone has in turn sued D&S Commercial Masonry ("D&S") for common law indemnification and contribution. D. 33. Capone now moves for partial summary judgment on Ries's claims, D. 95, and D&S moves for summary judgment on Capone's claims, D. 94. For the reasons below, the Court ALLOWS Capone's motion and ALLOWS D&S's motion.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute on any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." García-González v. Puig-Morales, 761 F.3d 81, 87 (1st Cir. 2014) (quoting Newman v. Advanced Tech. Innovation Corp., 749 F.3d 33, 36 (1st Cir. 2014)). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Rosciti v. Ins. Co. of Pennsylvania, 659 F.3d 92, 96 (1st Cir. 2011). Once that burden is met, the non-moving party may not rest on the allegations or denials in his pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which [he] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [his] favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable" to the non-moving party, "drawing reasonable inferences" in his favor. Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). "Conclusory allegations, improbable inferences, and unsupported speculation," however, are "insufficient to establish a genuine dispute of fact." Travers v. Flight

---

[1] Marilyn Ries also seeks loss of consortium because of her husband's injuries. D. 1. Because her claim is dependent on the viability of her husband's claims, the Court refers to the Rieses as a single plaintiff for ease of reference. Papadopoulos v. Target Corp., 457 Mass. 368, 369 n.4 (2010).

Servs. & Sys., Inc., 737 F.3d 144, 146 (1st Cir. 2013) (citation and internal quotation mark omitted).

### III. Factual Background

Unless otherwise noted, the following facts are undisputed and drawn from Capone's statement of material facts, D. 97, and Ries's response, D. 104.

On September 27, 2012, Ries was working on a construction project at Lynnfield High School. D. 97 ¶ 1; D. 104 ¶ 1. Ries was an employee at John Turner Consulting, Inc. and a special inspector for masonry on the project. D. 97 ¶ 4; D. 104 ¶ 4. Ries made his own decisions and exercised independent judgment about his schedule and tasks. D. 97 ¶ 6; D. 104 ¶ 6.

Ries had been working at his company since 2005 and had obtained various certifications relevant to his line of work. D. 97 ¶ 4; D. 104 ¶ 4. He also had attended courses, training and seminars on jobsite safety and fall protection for construction jobs. D. 97 ¶ 4; D. 104 ¶ 4. In 2009, Ries completed an Occupational Safety and Health Administration ("OSHA") 10 course on jobsite safety. D. 97 ¶ 4; D. 104 ¶ 4.

Ries arrived to the project site around 7:30 a.m. D. 97 ¶ 7; D. 104 ¶ 7. Capone had not yet begun installing steel beams. D. 97 ¶ 7; D. 104 ¶ 7. Capone supplied and installed the steel under a subcontract with the general contractor E.A. Colangeli. D. 97 ¶ 3; D. 104 ¶ 3.

Later that day, Ries observed a crane setting steel beams on the newly erected exterior concrete walls. D. 97 ¶ 8; D. 104 ¶ 8. He walked across the site to where the beams were being placed to conduct additional inspections. D. 97 ¶ 8; D. 104 ¶ 8. Ries climbed up scaffolding along the newly erected cement walls and ducked through an opening for a window. D. 97 ¶ 9; D. 104 ¶ 9.

Once there, Ries began inspecting the steel bearing plates on which the beams were

resting.  D. 97 ¶ 14; D. 104 ¶ 14.  Ries knew that the steel beams were not yet welded to the steel bearing plates.  D. 97 ¶ 14; D. 104 ¶ 14.  Yet after completing his inspection, Ries descended from the structure by grabbing an unsecured steel beam with both hands and swinging through a window opening in the wall.  D. 97 ¶ 15; D. 104 ¶ 15; see D. 106-12.  The steel beam that Ries grabbed ultimately struck him, resulting in various injuries.  D. 97 ¶ 2; D. 104 ¶ 2.

Ries acknowledges that his climb up the scaffolding violated general worksite safety rules and OSHA regulations, but he did it out of habit.  D. 97 ¶ 10; D. 104 ¶ 10.  He knew that the proper way to access scaffolding is by a stairway or a ladder.  D. 97 ¶ 11; D. 104 ¶ 11.  On the day of the accident, a ladder was at one end of the scaffolding that provided access to the entire perimeter.  D. 97 ¶ 12; D. 104 ¶ 12.  Ries knew about the ladder and had no reason to believe that the ladder was not set up correctly or otherwise unsafe to use.  D. 97 ¶ 12; D. 104 ¶ 12.

**IV.   Procedural History**

Ries filed this lawsuit on June 20, 2013.  D. 1.  In May 2014, Capone brought a third-party complaint against D&S.  D. 33.  In September 2015, the parties stipulated to the dismissal of all claims against Heery International, Inc.  D. 93.  Capone has now filed for partial summary judgment on Ries's claims against it:  negligence (Count I) and breach of warranty (Count II).  D. 95.  The Court, however, addresses only the negligence claim because Ries agreed at the motion hearing that his breach of warranty claim should be dismissed.  Separately, D&S moves for summary judgment against Capone's third-party claims:  common law indemnification (Count I) and contribution (Count II).  D. 94.  After the motion hearing on November 23, 2015, the Court took the matter under advisement.  D. 108.

**V.   Discussion**

A. **Capone's Motion for Partial Summary Judgment**

To recover for negligence under Massachusetts law, a plaintiff must prove a duty of care, breach of that duty, causation and damages.[2] Leavitt v. Brockton Hosp., Inc., 454 Mass. 37, 39 (2009). In its papers and at oral argument, Capone stresses that it is not moving for summary judgment on Ries's negligence claim in its entirety. Instead, Capone contends that partial summary judgment should be granted because it owed Ries no duty to warn; Ries knew that swinging from an unsecured steel beam was an open and obvious danger. D. 96 at 3-5.

"The open and obvious doctrine provides that a property owner has no duty to warn of an open and obvious danger, because the warning would be superfluous for an ordinarily intelligent plaintiff." Papadopoulo, 457 Mass. at 379. "Implicit" in the doctrine "is the assumption that the warning provided by the open and obvious nature of the danger is by itself sufficient to relieve the property owner of its duty to protect visitors from dangerous conditions on the property." Id. The "inquiry" under the doctrine "is an objective one." O'Sullivan v. Shaw, 431 Mass. 201, 206 (2000). It "focuses . . . on the reasonableness of the defendant's conduct: it presumes a plaintiff's exercising reasonable care for his own safety and asks whether the dangerous condition was, objectively speaking, so obvious that the defendant would be reasonable in concluding that an ordinarily intelligent plaintiff would perceive and avoid it and, therefore, that any further warning would be superfluous." Id.

Concluding that a danger is open and obvious, however, does not necessarily mean that a defendant owes no duty at all. "The owner or person in control of property is not relieved from remedying an open and obvious danger when it 'can and should anticipate that the dangerous

---

[2] "State law provides the substantive rules of decision in a diversity case." Geshke v. Crocs, Inc., 740 F.3d 74, 77 (1st Cir. 2014). The Court refrains from conducting an independent choice-of-law analysis and accepts the parties' assumption that Massachusetts law applies. Id.

condition will cause physical harm . . . notwithstanding its known or obvious danger.'" <u>Docos v. John Moriarty & Associates, Inc.</u>, 78 Mass. App. Ct. 638, 641 (2011) (quoting <u>Papadopoulos</u>, 457 Mass. at 379). Such a reason may arise "where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it." Restatement (Second) of Torts § 343A, comment f (1965). "Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." <u>Id.</u>; see <u>Papadopoulos</u>, 457 Mass. at 379 (stating that even though snow and ice can be an obvious danger, a duty to remedy can still arise because "it is reasonable to expect that a hardy New England visitor would choose to risk crossing the snow or ice rather than turn back or attempt an equally or more perilous walk around it").

In short, "where the only viable theory of negligence is a negligent failure to warn, the open and obvious nature of the danger causing the injury will therefore relieve the landowner of any duty vis-à-vis that danger." <u>Dos Santa v. Coleta</u>, 465 Mass. 148, 158 (2013). But "where a negligent failure to warn is not the only viable theory of negligence, such as where the plaintiff alleges negligent design," or "negligent failure to comply with a company safety policy," the landowner "may still owe a duty to the lawful entrant to remedy an open and obvious danger." <u>Id.</u>

The Court concludes that this case falls within the latter category. Capone did not owe Ries a duty to warn because the danger posed by the unsecured steel beam was open and obvious. First, Ries is an experienced construction inspector, well-versed in job safety and fall protection on construction sites. D. 97 ¶ 4; D. 104 ¶ 4; see <u>Bavuso v. Caterpillar Industrial, Inc.</u>,

408 Mass. 694, 701 (1990) (concluding that no duty to warn existed in part because the plaintiff had acquired a "considerable amount of experience" working with the vehicle in question). Second, "[t]his [was] not a case of a hidden hazard, undetectable by the plaintiff, that a warning would have neutralized." Bavuso, 408 Mass. at 701. Ries knew that the steel beam was not secured. D. 97 ¶¶ 14-16; D. 104 ¶¶ 14-16. Third, "[t]he danger here was one that no one who thought about it (and certainly no experienced [construction hand]) could fail to appreciate." Bavuso, 408 Mass. at 701. Ries knew that his method of getting on and off the scaffolding—by going through the openings for windows—violated general worksite safety rules and OSHA regulations. D. 97 ¶¶ 10-11; D. 104 ¶¶ 10-11. Had Ries "thought about it," he would have realized that by descending improperly the way he did, "a very heavy, cumbersome, and unsecured object" would now be "elevated . . . almost directly above" him. Bavuso, 408 Mass. at 701. Any warning here could not have made the danger more obvious. Nor could it have "reduced the likelihood of injury to an experienced [person]" like Ries who chose to dismount that way, "voluntarily exposing himself to a visible hazard." Id. at 702. The Court thus agrees that Capone had no duty to warn Ries about the open and obvious danger.

Nevertheless, Ries's negligence claim is triable because Capone may have owed Ries a duty to remedy the open and obvious danger. Docos is instructive. There, a carpenter sued the general contractor for injuries sustained at a construction site when a stack of sheetrock fell on him. Docos, 78 Mass. App. Ct. at 638. The carpenter was unable to avoid the falling sheetrock in part because of construction debris around him. Id. at 640.

The Massachusetts appeals court assumed that the construction debris was an open and obvious danger. Id. at 641. The court, however, held that a duty to remedy the obvious danger arose because there was reason to suspect that to a reasonable person in the plaintiff's position,

7

the advantages of encountering the obvious danger outweighed the apparent risk. Id. The record contained evidence that the general contractor "was aware of dangerous debris conditions and failed to address them pursuant to its own stated safety policy." Id. at 641-42. The room where the accident occurred "had enough debris in it two to three weeks prior to the accident" to impede work and on the morning of the accident had "substantial debris . . . covering the floor of the room." Id. at 642. Viewed in the light most favorable to the plaintiff, the court concluded that the plaintiff raised "an appropriate jury issue whether [the general contractor], in these circumstances, could and should have anticipated that the presence of construction debris would cause physical harm to [the plaintiff] notwithstanding its known or obvious danger." Id. at 641. The court explained that its decision did not create or impose a more exacting standard, but merely reaffirmed that the defendant "must conform to the construction industry standard practices, rules set by applicable Federal or Massachusetts regulations, and its own company policies on safety, including any contractually assumed obligations." Id. at 643 n.8. "If the summary judgment record contains specific facts showing a failure to comply with standard industry practices, relevant Federal regulations, and the company's own safety policy, as the record does here, then a general contractor . . . cannot rely on the open and obvious danger rule to negate its duty of care." Id.

Like in Docos, an obvious danger was present here. Under Massachusetts law, that danger "negates any duty to warn," but "the question nevertheless remains" whether Capone "had a duty to remedy the danger." Matouk v. Marriott Hotel Servs., Inc., No. 11-cv-12294-LTS, 2013 WL 6152333, at *2 (D. Mass. Nov. 21, 2013). Here, Ries has submitted an expert report on construction site safety. D. 102-4. His expert opines that in failing to secure the steel beams, Capone violated an OSHA construction regulation. Id. at 4. Because Ries has produced

evidence upon which a reasonable factfinder could find that Capone had a duty to remedy the obvious danger, an issue of material fact exists for trial.  Ries may have acted negligently in swinging from an unsecured beam, D. 96 at 4, but under Massachusetts law, a duty to remedy may still arise even if the plaintiff encountered the obvious danger through his own negligence.  Coleta, 465 Mass. at 156-57.  The reasonableness of Ries's actions are "not . . . conclusive in determining the duty of [Capone], or whether [it] has acted reasonably under the circumstances."  Id. at 157 n.10 (quoting Restatement (Second) of Torts § 343A, comment f (1965)) (internal quotation mark omitted).  Instead, Ries's decision to swing from the unsecured beam "bears on the question of his comparative fault for his injury."  Id.

The Court thus allows Capone's partial summary judgment motion because the unsecured steel beam was an open and obvious danger.  Count I nevertheless survives for trial because Ries "has raised an appropriate jury issue" regarding whether Capone "could and should have anticipated [that the unsecured steel beam] would cause physical harm to [Ries] notwithstanding its known or obvious danger."  Docos, 78 Mass. App. Ct. at 641.

    **B.**    **D&S's Motion for Summary Judgment**

        *1.*    *Common Law Indemnification*

Under Massachusetts law, the right to common law indemnification "allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss."  Elias v. Unisys Corp., 410 Mass. 479, 482 (1991); Fireside Motors, Inc. v. Nissan Motor Corp., 395 Mass. 366, 369 (1985) (noting that "[a]t common law a person may seek indemnification if that person does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another") (citation and internal quotation marks omitted).  Thus, the "general rule is that a person

who negligently causes injury to a third person is not entitled to indemnification from another person who also negligently caused that injury." Ferreira v. Chrysler Grp. LLC, 468 Mass. 336, 344 (2014) (quoting Fireside Motors, 395 Mass. at 370).

The Court concludes that no rational jury could find that Capone is vicariously liable to Ries through D&S's actions but otherwise blameless based on its own conduct. The parties have not identified any evidence to suggest that Capone and D&S had a relationship that could have created vicarious liability, such as a manufacturer-retailer or principal-agent relationship.[3] Instead, Capone argues that even if Ries prevails on its theory of liability against Capone (a theory that asserts Capone was directly liable), D&S independently owed and breached a duty of care toward Ries because D&S failed to take reasonable precautions to prevent injury to Ries. D. 105 at 4. Because "the right to indemnity is limited to those cases where the person seeking indemnification is blameless," the Court grants summary judgment for D&S on Capone's common law indemnification claim. Ferreira, 468 Mass. at 344.

2. *Contribution*

Mass Gen. L. c. 231B, § 1(a) provides that as a general matter, "where two or more persons become jointly liable in tort for the same injury to person or property, there shall be a right of contribution among them even though judgment has not been recovered against all or any of them." A right to contribution exists only if the party being tapped for contribution is liable to the injured party too. Berube v. City of Northampton, 413 Mass. 635, 638 (1992).

---

[3] See, e.g., Ferreira, 468 Mass. at 344 (noting that "[i]f a manufacturer supplies a defective product to a retailer, who sells it to a customer, who recovers from the retailer for an injury incurred, the retailer may recover in indemnity against the manufacturer") (citation and internal quotation marks omitted); Beauregard v. Peebles, No. MI-cv-201200570, 2015 WL 506985, at *4 (Mass. Super. Ct. Feb. 3, 2015) (noting that Massachusetts law recognizes "the well established common law rule that a principal is vicariously liable for any injuries caused by the negligence or other tortious conduct of its agent while acting within the scope of the authority delegated to it by the principal") (citation and internal quotation marks omitted).

Capone must establish that D&S owed Ries a duty of care, D&S breached this duty, damages resulted and a causal relationship existed between the breach and Ries's damages. Cracchiolo v. E. Fisheries, Inc., 740 F.3d 64, 69 (1st Cir. 2014). Whether D&S owed Ries a duty of reasonable care is a question of law. Roe No. 1 v. Children's Hosp. Med. Ctr., 469 Mass. 710, 713 (2014). If no duty exists, Capone's contribution claim fails.

Capone argues that D&S owed Ries a duty of care because "D&S was responsible for initiating, maintaining and supervising all safety precautions and programs in the connection with the performance of its subcontract." D. 105 at 3. D&S agrees that it was obligated to perform its own work under its subcontract "in a safe manner." D. 99 at 15. D&S, however, argues that it owed Ries "no duty arising from the scope of its contractual obligations" because "[o]n these facts," Ries was "injured not by any deficiency in the masonry work which was within the scope of D&S's contract, but by an unwelded steel [beam] produced and placed by Capone, and ultimately to be welded by Capone." Id. The Court agrees with D&S. Any duty that D&S owed here did not extend to Ries and his injury.

The contract between the Town of Lynnfield ("Town") and E.A. Colangeli places several responsibilities regarding safety on E.A. Colangeli. The "Contractor shall be responsible for initiating, maintaining and supervising all safety precautions and programs in connection with the performance of the Contract." D. 99-9 at 16. The "Contractor shall take reasonable precautions for safety of, and shall provide protection to prevent damage, injury or loss to . . . employees on the Work and other persons who may be affected thereby." Id. at 17. The "Contractor shall comply with and give notices required by applicable laws, statutes, ordinances, code, rules and regulations, and lawful orders of public authorities bearing on safety of persons or property or their protection from damage, injury or loss." Id.

11

At the same time, this contract also provides that subcontractors like Capone and D&S bear some responsibility for the project too. "By appropriate agreement, . . . the Contractor shall require each Subcontractor, to the extent of the Work to be performed by Subcontractor, to be bound to the Contractor by terms of the Contract Documents, and to assume toward the Contractor all the obligations and responsibilities, including the responsibility for safety of the Subcontractor's Work." D. 99-8 at 30.

D&S's subcontract with E.A. Colangeli incorporates these provisions. It states that D&S "agrees to be bound to the Contractor by the terms of the hereinbefore described Drawings, specifications (including all General Conditions stated therein) and Addenda and to assume to the Contractor all the obligations and responsibilities that the Contractor by those documents assumes to the [Town] . . . . except to the extent that provisions contained therein are by their terms or by law applicable only to the Contractor." D. 99-19 at 1. Capone's subcontract contains an identical incorporation provision. D. 99-22 at 1. Read together, these contracts dictate that each subcontractor was responsible for the safety of its own work on the project.

Capone points out that under the masonry specifications for the project, D&S had to "[a]llow inspectors access to scaffolding and work areas, as needed to perform tests and inspections." D. 99-20 at 22; D. 105 at 3. Capone argues that because Ries was injured while on the scaffolding, D&S owed him a duty of reasonable care. D. 105 at 4-7. The Court is not persuaded by this argument.

First, the Town and E.A. Colangeli contract provides that the "Contractor shall be responsible for the adequate strength and safety of all scaffolding, staging and hoisting equipment." D. 99-9 at 18. That contract also limits D&S's responsibilities for safety to work "performed by [D&S]." D. 99-8 at 30. Second, Addendum Two, which supplemented the

12

various contracts for the project, provides that Capone was responsible for the steel bearing plates and steel beams, including welding the plates to the beams. D. 99-14 at 1-2. Third, evidence from E.A. Colangeli supports the contention that Capone alone bore responsibility for the placement and welding of the beams on the project. D. 99-28 at 2-3; D. 99-30 at 7. Because Ries's injury resulted from work entrusted to Capone, D&S owed no duty of care to Ries. See, e.g., Restatement (Second) of Torts § 384 & cmt. d (1965) (stating that a subcontractor who on behalf of the possessor of land erects a structure or creates any other condition on the land is subject to the same liability, and enjoys the same freedom of liability, as though he were the possessor of the land, but "for only such harm as is done by the particular work entrusted to him"); cf. Weiser v. Bethlehem Steel Corp., 508 A.2d 1241, 1246 (Pa. Super. Ct. 1986) (affirming summary judgment for a subcontractor because it did not create the dangerous condition while performing its subcontracting duties; the general contractor had created the condition and negligently left it alone while carrying out its duties).

Capone's interpretation of the access-to-scaffolding clause does not carry the day. That clause is in a section of masonry specifications, titled "3.16 Field Quality Control," that lists several different types of inspections. D. 99-20 at 22-23. These inspections all relate to masonry. Even if this section imposed a duty on D&S for scaffolding safety, the duty would be limited to masonry inspections (rather than all activity on the scaffolding at all times). To hold otherwise would undercut the contractual provisions discussed above that place the responsibility for safety on E.A. Colangeli and undo the limitation that subcontractors were responsible for their own work. Here, all parties agree that Ries was not inspecting D&S's masonry, but Capone's steel bearing plates, which sat under the steel beams that Capone had placed. D. 97 ¶ 14; D. 104 ¶ 14. D&S thus had no duty toward Ries during his inspection.

Finally, Capone appears to argue that D&S should be liable to Ries because a D&S employee suggested to a Capone employee that the parties should hold off welding the beams to the bearing plates until they confirmed that the beams were properly aligned. D. 99-31 at 7; D. 105 at 6. The undisputed evidence, however, establishes that D&S's suggestion did not control Capone's decision to leave the steel beams unsecured. Capone's witnesses testified that Capone did not agree to leave the beams unsecured until the general contractor gave permission because D&S was not in the position to instruct Capone. D. 99-26 at 3; D. 99-32 at 5, 14; D. 99-41 at 2. An E.A. Colangeli witness testified that he never instructed Capone to hold off securing the beams. D. 99-30 at 5. Even reading the record in a light most favorable to Capone, it reflects that Capone made its decision either under the general contractor's instruction or on its volition. Neither scenario establishes that D&S controlled the decision.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Capone's motion for partial summary judgment, D. 95, and ALLOWS D&S's motion for summary judgment, D. 94.

**So Ordered.**

/s/ Denise J. Casper  
United States District Judge